Y. g. v. New York City Department of Education, et al. And I'll just name the case numbers. One matter has been with... the cross-appeal has been withdrawn, as I understand it. 22-1184, 22-1312, 22-1914, the cross-appeal on 22-2068 has been withdrawn. And what's remaining before us is then 23-1222. Thereafter, we'll hear a cross-appeal... an appeal from the New York City Department of Education in N.G.V. v. New York City Department of Education, 23-629 and 23-764. Is that correct? Yes, Your Honor. Wonderful. So when will we hear argument then in the first set of cases? May it please the Court, my name is Andrew Cuddy for the appellate parents. In looking at these fee cases, I just want to start off by saying that although this is about attorney fees, this is really about children with disabilities. The IDEA has this fee-shifting provision, which is unique to other fee-shifting provisions. And it is to ensure that these children achieve the ability to continue their education, seek employment and gain employment, and to have independent living. In order to have these opportunities, it's necessary for these parents often, too often, to rely on counsel to pursue the free and appropriate public education that they're entitled to. What we have been dealing with at the district court is, has evolved into a discouragement to parent attorneys to take these types of cases and assist these parents in pursuing their child's civil rights. But all of these cases are cases where you have won after the initial decision against you, but then you won at the IHO, right? They're not cases where you are asking fees, where you have lost, lost, lost, and then finally when you get to court, you've won, right? Cases before us. These are cases that the parents prevailed in a due process hearing in front of an impartial hearing officer. That's right. And based on that prevailing status- That's right. Sought fees in the district court. Here's my question. These cases may be very complicated and difficult when you finally bring them up to a court. And if you win then, you may have a right to fees which are unusual and extraordinary. But my problem is, are they really, is somebody discouraged by the fees you are getting from going from step one to step two? I mean, you know, you win and you win early, which is great for you and for the clients more, but isn't that what we have to look at? I'm glad you asked that question, Judge Calabrese. Each of these cases is about an individual student, a unique individual student. And what is transpiring in these cases is the parents are seeking out an attorney because their child is being deprived of free and appropriate public education. The parents are then, in a sense, forced to design that special education program for their child, to find a school, to find the providers, to find the evaluators to support that decision. If all of that was so easy and if all of that was not complex, the DOE would be doing it and the parents wouldn't be left in this situation of having to engage professional evaluators, attorneys, advocates to pursue that free and appropriate public education. All of these cases, in my opinion, are complex because each of these kids is unique. You can't take the autistic child- But every case we have is in that sense unique, isn't it? I mean, every case involves particular people and so on. What I'm trying to see is why the bulk of your arguments, which, you know, are plausible and they're nice, aren't the kind of arguments which could be made about any kind of case in which fees are given under these standards and where we defer to the district court. Now, I was never a district judge, and so I have little patience with district judges. But by and large- Except for Judge Harris. I don't blame you. But isn't this exactly the kind of thing where in the normal course of things we say, you may be right or you may be wrong, but you're better at it than we are. I think, Judge, a clear distinction between special ed practice and other areas of practice is that in other areas of practice, you often are getting facts and arguing those facts. But in special ed law, we are engaging our experience and our expertise in a sense, the designing of these special ed programs, coaching the parents through that, and then presenting it to a hearing officer. And again, if it was so easy to do, the DOE would be doing it and the parents wouldn't be left in the situation of doing this. This entails the dealing with professionals that provide related services, OT, PT, speech, psychological evals, neuropsychological evals, understanding all of those things and putting it together to argue this case. Another point, just following up on that, is, oh, these cases are so easy. Yes, they roll over when we come in at the last minute. They don't roll over because we did nothing. They roll over because we did everything. Doesn't H.C., doesn't our prior opinion shed a lot of light on this issue of whether these cases are particularly complex? We said we specifically, that panel, specifically referenced this argument that they lacked complexity. And we found no abuse of discretion. How is this materially different? Our arguments here, Judge, rely or focus largely on the application of the Johnson factors. And the Johnson factors being applied rather arbitrarily in order to diminish the recovery of the parents' attorneys. And in our view, it is causing a disruption to the delivery of services to parents because lawyers are faced with taking a case, they have an hourly rate, they can't assume what they're going to get in the end because we don't know how these Johnson factors are going to be applied. But we've also said, just in answer to that, that we're not going to require in the context of these cases that a district court judge, whoever it is, has to, in an elaborate way, consider each and every Johnson factor. And I think that that's what you're effectively, essentially, requesting us to say. I don't believe I'm asking that, Judge. I'm asking for a consistent application of Johnson factors and some idea of what these Johnson factors mean. For example, one of the Johnson factors of whether or not other work was declined as a result of the case. In Johnson, that declination, that foregone opportunity that that law firm had, related to them having to decline a case because of a conflict. So even to apply this to parents' attorneys or the parents' bar, that that Johnson factor force should apply, doesn't make sense because we're not being barred from taking work because of conflict. That Johnson factor doesn't really apply at all, but it was applied to us. Isn't the question really the sensible one of whether because a lawyer takes a particular case, he couldn't take, she couldn't take another case which, because of the nature of the case, would pay much more? That's a sensible thing to look at, and that's something that is relevant in the line of cases and is relevant here, too. But if the time you are taking doesn't take you away from a case which, because of its peculiarity, might pay you much more, then how is it relevant? Well, let me bring it back to our purpose here of providing legal services to these families. So if the lawyer has the paying client, he has to turn away the worthy and needy client who doesn't have the ability to pay. So there is a foregone opportunity at the expense of a needy family. The statute was designed to attract competent counsel, and by going to the lowest rates, finding a Monday morning quarterback to look at your rates, it's difficult for a firm to predict what the recovery may be in the end, and that makes the cases undesirable in themselves, because these things and application of these Johnson factors in these cases doesn't allow any predictability. The lack of predictability is seen, I think, on both sides in the 10-day offers that they made trying to cut off fees. But are you arguing that district courts, for some reason, because they don't like these cases, and I can understand that because when they come to me on appeal, they're not my favorite cases because there are so many different things, tend to be, I won't say biased, but tend to discount the parent's side even when it wins and do that in deciding what the fees should be. That is, you know, I would find it easier to come out with you if I could have a real sense that this was an area where district courts were just saying, oh, come on now, these people shouldn't get that much money. And if that was really the nature of your argument, but I didn't see it as being made. Judge Calabresi, I think there's a clear distinction in the cases that were originally before you with Judge Hellerstein's decision in YG. In front of Judge Hellerstein, one of the issues that came up was the dearth of special education attorneys to represent these families. And he adjourned the original oral arguments and said, come back, I want more evidence on this, which we provided to him, and the DOE came in with nothing to him. And he said yes. He recognized and cited back to prior case law as well that there is a dearth of these attorneys, and these attorneys should be compensated at rates from the broad market, not some narrow special education market as if they're second-class lawyers, because lawyers have to be attracted to take on these cases. But just to be clear, the other judges in MM and JP, BW, MZ, all made findings that there was no indication that your firm was prohibited from taking other work. And I don't know how we're supposed to say that those findings are an abuse of discretion. Well, in many of these cases, Your Honor, we didn't argue that we didn't have other work to take. Our firm at the time was focused almost entirely on taking entirely contingent cases. So if we take a contingent case and another one comes in, it's not an opportunity we lost because our time is filled with the first case. The second case doesn't somehow make us have a lost opportunity. It's the same fee transaction in a sense. If that second case was a paying client, then it would have been a lost opportunity. Be that as it may, the findings were made, and I'm just not sure how you can ask us to say that those findings by the district court in each instance was an abuse of discretion. Why is there a finding at all? Because that's one of the factors that they have to consider under Johnson. And to the extent that you think that Johnson promotes a level of uncertainty that makes it difficult for a lawyer in your position to understand the compensation structure, is your objection to Johnson or to the particular application of it by these district courts? It's the application of it, but in a broader sense, I think the application of these Johnson factors undermines the purpose of the IDEA itself. Do you think we should say goodbye to Johnson? I personally believe that the IDEA has its own unique provision. Let me be clear. Are you saying that Johnson should not apply to IDEA cases? If Johnson is to apply to IDEA cases, it needs to be applied consistently, and it needs to be applied with a view of the purpose of the IDEA, which is to ensure these children have attorneys to represent their special needs. You're saying Johnson needs to be applied in IDEA cases in favor of the lawyers, but Johnson just gives us some factors. It doesn't say it has to go one way or the other. Well, Judge Calabresi, I take a little bit of offense that this is about lawyers. I don't stand here today. Oh, no. No, I'm not saying it's about lawyers. I understand you began by saying this is about these kids, and that's what the whole IDEA is. It's a complicated matter of kids, parents, estates, and the lawyers that came on. Let's be clear. I'm completely with you on that. In N.A., we had an application of the community rate to be this narrow bar, and I think that much of the district court's decisions focus on the parents bar being a narrow market. I think in contrast with Judge Hellerstein, he recognized that the statute was written to attract competent counsel to this area of law to represent these families and to not look at the broader market. The broader market of what the range of fees should be is an error. In K.O., there was an application of employed at the firm since in order to bring the lawyer's rate down, and in a sense disregarding the lawyer's prior experience. This negatively impacts on attracting counsel, and it impacts on firms that need to potentially make unilateral hires from other areas of practice to meet their needs when they know if they're bringing in a lawyer who's a five, six-year experience lawyer coming over to their firm, that lawyer is going to be started at ground zero because he's got zero special education experience when he comes on board. I believe that's an abuse of discretion. In E.W., the court seemed to start with the proposed rates by the Department of Education as the basis for awarding the fees, and I think that was an abuse of discretion. Relying on the party that didn't even bring in any proof to the case about what the community rates is and their lawyer's assertion of what the hourly rate should be, I think, is an abuse of discretion. In E.W., my understanding is the magistrate judge noted that many of E.W.'s arguments in favor of the rates that were sought were policy arguments that weren't necessarily tethered to the specifics of the case law and also had noted that it considered the rates that you had proposed to, quote, the alleged dearth of lawyers providing representation in IDEA cases. So when you say seems to defer the DOE, this is a judge doing what judges do. I consider the argument by one side, I consider the argument by the other side, and I make a decision. Yes, Your Honor. I believe that considering arguments is a necessary element of all of this, but in these cases, we provided the court with proof of what the community rates were, and the DOE did not provide contrary proof. Instead, the DOE made almost all of its arguments based on prior case law. The prior case law, by the way, that goes back, in my opinion, to 2011 when I had my first case up here, a fee case in front of Judge Castell, where he awarded 375 for my hourly rate. And here we are stocked basically in that same rate more than a decade later. But if the argument is the simple one that district judges are misapplying the Johnson factors by looking at rates which were too old, that argument is a simple argument that gets made in an individual case to that judge in saying these are no longer the rates. That's a question, is that clear enough, so that that would be an error of law, and that would be a quite specific issue. But here you're making a much more general argument about how you're being treated, and I'm not quite sure how to deal with that. I mean, I can understand very well the argument which says you have looked at rates in 1990, and the rates now are different. Well, that can be a question of law. It's something that I can look at as an appellate judge. Thank you, Judge Calabresi. I'm going to cut ahead to a different point of what I hope to cover today, and that is that issue of the evidence and how the evidence is viewed. In these cases below, we provided declarations of other special education practitioners about rates. We provided declarations of a fee expert. We provided a parent's attorney's declarations. We provided proof of paying clients that we had paying our rates. We provided IDEA fee award charts showing the stagnation of the fees. We provided retainer agreements for cases where we were paid on our hourly rate for state court work. We provided the Laffey Matrix for comparison so that the Washington, D.C., Laffey Matrix could be compared to fees up here. We provided FOIL records from the Department of Education that showed they were paying out rates higher than this and fees higher than this. And we provided outside counsel for the DOE retainer agreement that showed rates higher than what the courts were awarding. And did the other side provide any evidence to the contrary? The evidence of the DOE in these cases largely consisted of their own attorneys saying, this is what we think the rates should be, and relied on the prior case law, which is a circular kind of thing that is hard to overcome if the courts are always relying on the prior case law and not relying on the evidence of the market rates that's put in front of them. Judge Castell did rely on the evidence in front of him. But the other district court judges have in some way discounted or found not credible everything that we've been able to put in front of them. And I'm at a loss as to what more to put in front of them. In two of the cases, I think EW is one, and I can't recall right now the other one. Two of the cases, they suggested that we go out and do wage analysis and comparisons to the CPI. Which I suppose we could do, but that's really turning this into major litigation. Back when I did Judge Castell's case in 2011, my recollection is I provided two or three affidavits of other practitioners, and that established the rate. But now we're doing everything we can to establish the rate, and everything is being ignored. When it should be looked at, in my opinion, in a holistic view. You might not rely on the Laffey Matrix, or arguments about the Laffey Matrix. You might not rely on the expert declaration. But when you put all these things together, you should be able to rely on that as some evidence of what the community rates are. I've not been able to find anybody in our research and attempt to address these things that is stuck on these rates that the court seems to be stuck at. So just in connection with EW, for example, one of the things that you suggest, that your argument suggests, is that there would be some difficulty in incentivizing attorneys to work in this area. Is that right? Yes. As I understand it, in EW, in the opinion, the order, you provided no evidence that there was any deterrence for attorneys to engage in IDA work. Is that right, or is that wrong? And what it says is, you offered no evidence showing that the rates DOE has proposed, or awards in previous cases, has impeded plaintiffs in securing counsel. Is that correct? In regards to those particular clients, that is correct. At the time, every case we were taking was based on a contingent basis. At the time, we weren't stuck on these rates. But now we're stuck on these rates. So in the future, yes, there will be a deterrent in the firm taking those cases. But EW, in EW, the court also took the fee that was awarded in RG and increased it by 5% to take into consideration, and really sort of not have it be that the fees get stuck in time. Yes. And interestingly, it was a 5% increase. And somehow, in its analysis, said it was related to inflation. But we've had inflation since 2011. The inflation since 2011, not compounded, is 26%. So this small incremental application of an increase is, again, relying on the prior case law that is stuck. When Judge Costello awarded the 375 per hour, where was the range at that time? In other words, was he at the high end of the range, the same way Judge Hellerstein seems to be at the high end of the range in the cases at issue here? Or was he at the low end of the range, the middle end of the range? Where was the range back in 2011? My recollection of Judge Costello, he recognized the two lead attorneys on that case, Jason Stern and myself, as being highly experienced. And I believe that was towards the top of the range. But there were other lawyers. I think Gary Mayerson was one of the lawyers who provided an affidavit for us on that one. And my recollection is he was either 600 or 650 an hour. And Gary is probably 10 years senior to me. He's a very experienced lawyer that focuses his practice on autism. So he has that kind of niche type of work. Mr. Scuddi, you don't have to take up all your time. I do have a few more points. I know that the standard here is an abuse of discretion. And the arbitrary and inconsistent nature of the application of the Johnson factors is, I think, what the parents' bar needs some clarity on. Because there's cases behind this one. Not just mine. I was informed the other day that there's 300 district court cases related to fees in the southern district at the district court now. And I believe it's many more than that because some of those cases are bundling cases together. One of them has 250 cases bundled together. So you asked for uniformity. Basically what you want to do, I think, what you're concerned about, this is my understanding now, is predictability and uniformity of decisions. Is that right? We do need that. Is that the central sort of core part of your argument? Of course you want more, higher rates and so on. But your principal concern that's driving this subsidiary is uniformity and predictability. I believe there needs to be uniformity and predictability. And there needs to be some recognition of the IDEA fee provisions. And that if these Johnson factors are being applied, they have to be applied in the context of the IDEA fee provision. That IDEA fee provision says reductions. There's a section in there for when reductions. So 1415. Everybody can read that. Right. But I think you'd be happy if everybody read that. People, judges applied the Johnson factors, although I think you've also suggested that or acknowledged they don't need to refer to every Johnson factor. But maybe I'm wrong about that. But so long as there is some uniformity, some, in your view, at least perceived rationality to the process writ large, you'd be okay. That's part of it. Yes, yes. I mean, we need that predictability, right? We need that consistently. Forrest Gump said, life's like a box of chocolates. You never know what you're going to get. But we should know what we're going to get. We have to, as businessmen and lawyers, we have to have an idea of what we're going to get when we make that decision. Am I going to take this contingency fee case or not? Am I going to assist this family or not? Because you have to have that certainty. So how different is that search for certainty here than in the run-of-a-mind cases that you may take on a contingent fee? It is, you know, everybody wants consistency. But district judges then decide. Now, how, again, different is what you desire here from what would be the run-of-a-mind case if we had to say, in all of these cases, this is what it is? And I've got to say that I'm not at all sure that in the run-of-a-mind of cases, if we impose the degree of consistency, this would be one which would be favorable to lawyers. I mean, when I look at contingent fees and torts, which was my field, the fact that there was an inconsistency is something that lawyers have been very happy with. Am I wrong? The consistency, I think, that we need is a consistency of if the Johnson factors are used, of the application of these Johnson factors. But we also need to have, and this is probably more important because it ties to what the community rate is, we have to have some idea and some consistency of what proof the courts require in order to establish the community rate. You see, in the end, it sounds to me as if you are saying these are cases that should start out in judges' minds as requiring more, and that seems to me to be precisely the issue that HC instead decided against you. And that's my problem. HC may have been wrong, and that we should have said in HC, this is a category of cases where you start at a higher level. But we didn't do it in HC, and I'm bound by HC. I understand what you're saying, Judge Calabrese, but in HC, we were not, at that time, aware of how the court was, in my opinion, ignoring the evidence before it. In HC, we were basing our submission of proof based on prior experience with the courts of providing affidavits of practitioners in the field. So at that time, the court started to ignore the affidavits of practitioners in the field. And then we started shifting the proof that we were providing, and we provided all of this additional proof that we were able to obtain about what the community rate is. And all of the proof that we have provided, in some way, gets discounted or, in some cases, completely ignored. Was that not blessed, in a sense, rightly or wrongly, by the panel in HC? Say again? Was that not blessed, rightly or wrongly, at some level, by the panel in HC? Was what blessed, Your Honor? So I think that the panel, that HC had before it, this lack of uniformity that you're describing. Is that correct? In HC, the lack of uniformity about the Johnson factors was not something that was an issue in HC. In HC, we were arguing that, hey, these fees were not appropriate. The hours and the rates were not properly determined. But here, we've focused largely on these Johnson factors and largely on the issues of the evidence that's been provided and ignored in establishing the community rate. So you're saying HC did consider whether these cases as a whole are different and should be treated differently, but did not consider a specific issue of how the Johnson factors were applied to them. Have I got that right? It did not, yes, Your Honor, did not consider the application of the Johnson factors, and it did not include these issues of this additional proof that's been provided to the district courts about the community rate. All right, I think we've got your argument. You have reserved some time for rebuttal. Thank you, Your Honor. We'll hear from your friend on the other side. Mr. Kerfman? You don't need to feel you have to use the whole 45 minutes. I concur with that statement. Thank you, Your Honors. Jeff Kerfman on behalf of the New York City Department of Education. I would just like to begin briefly with HC and reiterate that just two years ago, this court rejected 14 appeals that look strikingly similar to the appeals that Cuddy Law Firm brings here. That's what I thought, but you heard the response that HC actually was dealing with a different set of issues and problems. Your Honor, HC went through certainly one example district court opinion, and it explained that there the court had examined recent SCNY cases to assess the prevailing rate in the community. It had considered all of the Johnson factors, making specific findings as to some of those factors. It had assessed whether the firm billed a reasonable number of hours based on the specifics of that case, and it found that in following that process, the district court had not abused its discretion. We can see in the 19 appeals we have here, the district courts followed the same exact process. They looked at specific factors in each case in order to assess a fee based on the circumstances that they were looking at. Is there an issue before us as a panel that was not, in your view, resolved by HC? Your Honor, I don't think that there's an issue that has been raised here that was not resolved in HC. The deterrence issue, that is the issue of whether the rates have deterred plaintiffs from securing counsel, was that before HC, the panel in HC? I am not aware of whether there was a specific argument that courts were not well enough attuned to that issue in the cases before HC, but this is an issue that many, many district courts emphasize explicitly in their opinions in these cases. And on the dearth in the market point, I'd like to just point out two factors. The first is that CLF has not presented a shred of evidence that there is, in fact, a dearth of attorneys in the market for special education litigation services in New York City, let alone that any such dearth is attributable to rates that are inadequate to attract competent counsel. I'm not aware of CLF presenting any declarations from parents that they were unable to retain competent counsel because counsel was unable to, was unwilling to accept the rates that were available. I'm not aware of any declarations from special education attorneys. Would you say that the main holding in HC was that these cases are not different from the bulk of cases, from generality of cases of where the question is, what is the appropriate fee? And there is no reason to think that the district judges in these cases are making decisions which are contrary to the decisions they make all the time on this issue. But that's what HC held. I think that's a fair way to characterize HC, Your Honor. I think HC, one part of the decision, looked at the type of analysis that district courts are meant to conduct in this context, looked at the factors that this court has instructed the district courts to consider and assessed whether those district courts fairly analyzed those factors in the context of the cases that were before them. And because there is appropriately a high degree of deference to district court analyses in this context, the court concluded that the district courts each had fairly applied those factors. And that's specifically applying the Supreme Court statement. In these fee cases, we have to defer especially to district courts. I think that's absolutely correct, and I think that's a feature of the fact that there are multiple, so many factors that courts are meant to consider when making these determinations. I'd like to touch just briefly on a couple other points. The second point I'd like to emphasize is Cuddy has pointed to pieces of evidence that it has continually submitted in these cases in order to show that its rates are reasonable. But in every case, the district courts analyze that evidence in detail, and in virtually every case they point out that that evidence does not allow them to make the type of comparison to the cases Cuddy is presenting as evidence of its fees, because there's no context surrounding the cases Cuddy is presenting in its evidence. By contrast, the district courts here need to do a highly case-specific analysis to decide what a reasonable rate is. And so the evidence that Cuddy is submitting is not allowing the district courts to do the type of analysis that this court has called on them to do. I'd also just like to touch briefly on the point about predictability. I think this, again, goes back to the deferential and case-specific nature of this analysis. The Cuddy law firm would like, you know, one rate that they can expect, but the district courts have demonstrated that it's not appropriate to just grant one blanket rate in every single type of case. Cases differ, and it's appropriate to take those factors into account. I don't think the Cuddy law firm would want the district court to ignore factors that are specific to a case that may argue for increased rates. I mean, I'll defer a little bit to my colleague, Judge Karas, but these are not related cases that could be placed before one judge, for example. Is that correct? I'm not aware of a way that that could occur. I mean, these cases are IDA fee cases are brought following an administrative proceeding, and they're brought to challenge or seek fees in connection with that particular proceeding. But there was a suggestion that the district courts, whether in these cases in particular, perhaps in general, are too linked to old fees and have not taken into account raised fees and inflation in particular of the 5%. Now, I do think that courts are very well aware of how much inflation there has been because our own salaries have not kept up with it in any way. But the argument has been made that somehow there is a bias here to older decisions and fees. Could you address that for a moment? Certainly. I'd make two points. The first is that when you look at these district court decisions, they are quite consciously taking into account the fact that this court has, in fact, instructed them not to lock old rates in as the prevailing rate. And so, you know, we see, for example, in YFSF, this is at SPA 68, the court is self-consciously stating that it is not going to adopt a rate that is simply a recycled rate from 10 years ago. I think similarly in MR and EW, the courts expressly took the passage of time, took inflation into account in determining a rate. And NGB explained that it was adopting a rate that had already taken into account the passage of time. I'd also point out secondarily that there has been discussion of prior rates. I believe it was an award from Judge Costell approximately a decade ago, where I think the rate at the highest end of the range was something along the lines of $375. If you look at the range of rates in this case, the majority of the cases are awarding rates at $400-plus, that they have gradually increased. And so I think that's only evidence that the district court judges are taking inflation and the passage of time into account in the rates that they're awarding. If there are no further questions, we'd ask that you affirm other than in the NGB cross-appeal, which I'll address next. We'll address later. Thank you. Mr. Scully. One thing that in my haste I left off at the beginning was the issue of unreasonable protraction. There's a specific IDEA provision that says that fees are not to be reduced if there's unreasonable protraction. And in three of our cases here, we have what we believe are clear evidence of unreasonable protraction. And I think what the parents' bar would like to know is what constitutes unreasonable protraction. If not appointing a hearing officer four months in a process that's supposed to be 75 days in length. You're not arguing that our previous case, which says that even if there is unreasonable, this can be taken into account in determining the rates, because that we settled, whether correctly or not, in an earlier case. You're saying that the courts are too reluctant to find unreasonable protraction in these cases. Am I right? Yes. What I'm saying, Your Honor, is that there needs to be some definition of what actually is unreasonable protraction. We've laid out three very strong positions of facts in these cases that we believe are clearly unreasonable protraction in our mind. And somehow Section G of the fee provisions needs to be clarified so people know what that is. I must say, I am rather sympathetic to the fact that the district courts don't seem to find unreasonable protraction in cases where, were I a district judge? Thank God I'm not. I would look at it and say, you know, this looks like that. And that maybe because they thought that if they found it, they couldn't do what they do anyway, they've been reluctant to find it. But it might be better if they found it more and then decided what was reasonable under the circumstances, which would still sometimes cut things down, but being aware of that. The four instances, one, failing to appoint a hearing officer, which we believe is egregious and should have been a finding of unreasonable protraction, then noncompliance with the order of the hearing officer, and then having to go to district court and get a preliminary injunction and then get sanctions against them to resolve the issue. You know, I have a problem going back into a particular case and saying the district court was wrong on that as a matter of law. I have more problem doing that just in terms of what my job is than making a general statement that this is something that really district courts ought to look at because it does still allow them to do what is right. That is, we could write an opinion that didn't reverse on that but gave some kind of guidance. Or, for example, Your Honor, remanding it back for consideration with your guidance. And then the other one, in the hearing itself, the hearing officer found that the DOE had engaged in frivolous conduct, wasted the tribunal's time, and delayed the case gratuitously. How can that not be unreasonably protracting the litigation? On the broader market issue, this court, SW versus the Board of Education of New York City, had written in a previous decision- and say, even if there is protracted litigation, that is not necessarily enough. You know, relying on 1415 to prohibit the district court from reducing the fees requested because the IDEA authorizes an award only of reasonable attorneys' fees. This is all about Section G of that fee provision. And what that means. It says they cannot reduce if there's unreasonable protraction. So what does that we cannot reduce mean? It's not clear. Yeah, but we have held that we can. Right. Whether that makes sense, and I've struggled with whether that means something about, but generally reasonableness is still there. Or if this applies to the parent's side of delay as against the lawyer's side of delay, or what have you, what can be reduced or not. But whatever it means, HC did say that the district courts can still do it, and we're bound by that. You know, we can. If you want us to go and beg, good luck. In the fee provision, it says- I know what the fee provision says, and I know what HC held. But specifically for the parent's part, if we engage in frivolous conduct, continue to litigate beyond the point of the need for the litigation, that the parent can be assessed the district's fees against her. And there is some case law in our circuit, I don't believe, but there is some case law where the parents have had to pay the school district's attorney fees for unreasonably protracting, unreasonably litigating something, litigating past the point of it being reasonable to do. And they've had to pay the parent's attorney fees. Here, the parent's the victim of the unreasonable delay, and the section G seems to be meaningless. And there needs to be some guidance on that. Going back to an earlier court, this court's decision in SW versus the Board of Education in New York City, and I'm going to quote from it. The school board additionally contends that fee awards for IDEA administrative proceedings should be lower than fees awarded for full-blown trials and litigation in courts. Because the former are far less demanding form of litigation representation. There's no support in the law for this distinction. And then it concludes, such a result would undermine the very purpose of the IDEA. And I think that's what's happening here. The court is using the Johnson factors to award parent's attorney's fees on a rate that is not commensurate with the broader market. And it discourages, the effect of that is discouraging people from taking IDEA cases and not attracting competent counsel to the bar, to the parent's bar. Some of the evidence that was offered was discounted with the sense, with a comment from the lower court about that piece of evidence not being in the context. Not taking the Johnson factors into context. And as was previously stated, all these cases are very unique. To put on proof about the unique nature of some other case and linking all the Johnson factors from kid A to kid B to kid C and to put that together. That just makes complex, full-blown litigation on a fee matter, which this is not supposed to be. Okay, just to answer your question on the related cases. There are some cases in the Southern District right now, where lawyers have taken some of their own cases and put them in front of one judge. There is one, Judge Woods has disdained that practice and asked that that not be done and kicked the cases back to be separated. Some of the judges have allowed small packets. There's one right now with 250 all packaged together. Which is an IESP, which is an IDEA case, but a little different. We've had some cases where we've asked, where our client has a subsequent fee litigation. We've asked it to be called related and had that rejected because it was a different school year. So one of the judges said we weren't allowed to do that. And do I have any further questions from you? Thank you. Thank you very much. I appreciate you give us the extra time today and I hope you got your answers. Thank you. So we'll hear the cross appeal and we'll reserve decision on that appeal set of appeals.